**Opinion issued September 15, 2022**



In The

# Court of Appeals

For The

# First District of Texas

——————————————

## NO. 01-20-00668-CV

———————————————

**TRINH NGUYEN, Appellant**

**V.**

**TERRA NOSTRA REALTY, INC. AND RENE CASTILLO, Appellees**

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-00772**

---

## MEMORANDUM OPINION

After a bench trial, the trial court rendered judgment against Trinh Nguyen for

breach of an oral agreement to share commissions earned in real estate transactions

with Rene Castillo and his brokerage firm Terra Nostra Realty, Inc. (Terra Nostra)

(collectively, Castillo). On appeal, Nguyen contends the trial court erred by

(1) granting a new trial and reinstating Castillo's claims after first granting Nguyen a no-evidence summary judgment; (2) ultimately denying her no-evidence motion for summary judgment when it was reset; (3) rendering judgment on an agreement that is unenforceable under the statute of frauds; and (4) concluding that the Texas Real Estate Licensing Act (RELA) did not require the commission-sharing agreement to be in writing.[1]

We affirm.

## Background

Nguyen and Castillo worked together in real estate before Castillo filed his breach-of-contract and quantum-meruit suit against Nguyen, alleging she had not complied with an agreement to give Castillo ten percent of the real estate sales commissions she earned in a two-year period.[2] According to Castillo, the commission-sharing agreement was intended to compensate him for acting as Nguyen's sponsoring broker.

After answering the lawsuit and asserting affirmative defenses, including that the statute of frauds barred enforcement of any commission-sharing agreement,

---

[1] Castillo has not filed a brief responding to Nguyen's issues on appeal.

[2] Initially, Castillo pleaded additional claims against Nguyen for tradename and service mark infringement, injury to business reputation, unfair competition, misappropriation, and fraud, requesting both damages and injunctive relief. These additional claims were abandoned in an amended pleading, leaving only the breach-of-contract and quantum-meruit claims at the time of trial.

Nguyen moved for a no-evidence summary judgment on all claims against her.[3] Castillo did not respond, and the trial court granted Nguyen's no-evidence motion.

Castillo timely moved for a new trial and asked the trial court to set aside the summary judgment because his counsel was "duped into" not responding by Nguyen's counsel's representation that the no-evidence motion would be "passed." Castillo also complained about pending discovery.

Although Nguyen disputed her counsel had agreed to pass the no-evidence motion, the trial court granted Castillo's new-trial motion and reinstated the claims against Nguyen. Nguyen reset her no-evidence motion, and Castillo responded. Without stating its reasons, the trial court denied the motion.

The case proceeded to a bench trial.[4] Castillo testified that he founded his brokerage firm, Terra Nostra, in 2012 and hired Nguyen the same year. They agreed Nguyen would open and manage a Terra Nostra office in Bellaire, Texas. Nguyen would collect sales commissions from Terra Nostra agents and share ten percent of those commissions with Castillo, keeping 90 percent for herself. Castillo explained that the 90/10 split was more generous to Nguyen than a typical brokerage

---

[3]    Nguyen also pleaded counterclaims against Castillo, alleging that he breached a promise to transfer ownership of Terra Nostra to her in exchange for her promise to forgive a loan between them. Her counterclaims included causes of action for breach of contract, promissory estoppel, unjust enrichment, and breach of fiduciary duty.

[4]    Before the trial, Nguyen's counsel withdrew. She appeared pro se at trial.

arrangement because she was going to cover the costs of the Bellaire office. No writing memorializing the commission-sharing agreement was introduced into evidence.

Castillo further testified that he took a two-year "hiatus" from real estate to pursue a food business; however, he continued to supervise Nguyen during that time. Issues arose during Castillo's hiatus that suggested to him that Nguyen was mismanaging the business. Castillo returned to Terra Nostra and investigated whether Nguyen had not complied with their agreement by withholding commissions. Based on his review of Nguyen's sales history, Castillo determined that $60,761 was owed to him. Nguyen did not cross-examine Castillo or present any evidence contradicting his testimony.

The trial court rendered judgment for Castillo and ordered Nguyen to pay $60,397.89 in damages and $51,180 in attorney's fees.[5] The trial court also entered findings of fact and conclusions of law:

### *Findings of Fact*

     1.    The relevant time period is January 1, 2014, through March 8, 2016.

     2.    [Castillo] was at all relevant times[] a real estate broker licensed by the State of Texas.

---

[5] Though it did not expressly reference Nguyen's counterclaims, the trial court's judgment included finality language disposing of "all claims and all parties" and indicating that "all relief not granted" was denied. Nguyen does not challenge the denial of her counterclaims on appeal.

4

3.     [ Nguyen] was at all relevant times[] a licensed real estate sales agent.

4.     [Castillo] sponsored [Nguyen's] license during the relevant time, which required [Castillo] to provide supervision over each of [Nguyen's] real estate transactions.

5.     [Castillo] was at all relevant times[] the owner of [Terra Nostra], a licensed real estate brokerage.

6.     On or about January 1, 2014, [Castillo] took a hiatus from real estate to pursue a restaurant venture.

7.     [Nguyen] expressed an interest in managing [Terra Nostra] while [Castillo] was on hiatus. [Castillo] agreed, and the two entered into an oral agreement.

8.     [Castillo] agreed to allow [Nguyen], under [his] supervision, to manage and develop the business of [Terra Nostra] while he was on hiatus. [Nguyen] would operate [Terra Nostra] out of her own offices located in Bellaire, and [she] would be responsible for all overhead and expenses.

9.     In addition to the above terms, [Castillo] and [Nguyen] agreed to a commission split of 90%/10%, in favor of [Nguyen].

10.     In late 2012, [Castillo] offered to sponsor [Nguyen's] real estate license for free, but [she] agreed to pay [him] a commission. . . .

11.     Additionally, all of the agents hired by [Nguyen] agreed to sign a commission agreement with [Castillo], under the *same terms* [he] alleges [she] agreed to on or about January 1, 2014. . . .

12.     On or about March 2, 2016, [Castillo] returned from his hiatus and discovered [Nguyen] had cleaned out [Terra Nostra's] bank account.

13.     Despite numerous demands by [Castillo], [Nguyen] has continued to refuse to pay [him] any of the commissions due and owing.

14.     [Castillo] calculated the commissions due him by [Nguyen] by obtaining data from the HAR.com website.

5

15. [Castillo] calculated the total commissions due equal $60,397.89. . . .

16. [Castillo and Terra Nostra] are also entitled to an award of attorney's fees in the amount of $51,180. . . .

(Emphasis in original.)

### *Conclusions of Law*

17. On or about January 1, 2014, [Castillo and Nguyen] entered into a valid and enforceable contract regarding the development of [Terra Nostra] while [he] was on hiatus, including the commission split between [them].

18. The contract allowed [Nguyen] to develop the Bellaire office of [Terra Nostra], including allowing her to hire her own agents. [She] was responsible for all of the Bellaire office's operating expenses. Additionally, [she] agreed to pay [Castillo] 10% of all commissions [she] received during the period January 1, 2014 to March 8, 2016.

19. [Nguyen] breached the contract by failing to pay [Castillo] any commissions due, entitling [him] to damages.

Nguyen timely moved for a new trial, challenging the sufficiency of the evidence and the enforceability of the commission-sharing agreement under two statutes of frauds. She argued the commission-sharing agreement was unenforceable under the Texas Business and Commerce Code because it was not in writing and not to be performed within one year. *See* TEX. BUS. & COMM. CODE § 26.01(b)(6) (requiring "agreement which is not to be performed within one year from the date of making the agreement" to be in writing and signed by party to be charged). She also argued that the Texas Real Estate License Act (RELA) prohibited Castillo's recovery of real estate commissions based on an oral agreement. *See* TEX. OCC.

6

CODE § 1101.806(c) ("A person may not maintain an action in this state to recover a commission for the sale or purchase of real estate unless the promise or agreement on which the action is based, or a memorandum, is in writing and signed by the party against whom the action is brought or by a person authorized by that party to sign the document."). The trial court denied Nguyen's motion for new trial by written order, and she appealed.

**Appealability**

In her first and second issues, Nguyen challenges the trial court's orders granting Castillo's motion for new trial, which had the effect of setting aside the no-evidence summary judgment the trial court had previously granted, and then denying her no-evidence motion for summary judgment when it was reset. After the trial on the merits, neither of these orders is reviewable on appeal.

Here, after initially granting Nguyen a no-evidence summary judgment, the trial court reinstated Castillo's claims against Nguyen on Castillo's motion for new trial. An order granting a motion for new trial rendered within the trial court's plenary power is not reviewable on appeal. *See Wilkins v. Methodist Health Care Sys.*, 160 S.W.3d 559, 563 (Tex. 2005); *Cummins v. Paisan Constr. Co.*, 682 S.W.2d 235, 235–36 (Tex. 1984). When a motion for new trial is granted, "the court essentially wipes the slate clean and starts over." *Wilkins*, 160 S.W.3d at 563. Castillo's new trial motion was timely filed, and the trial court granted the motion

7

during its period of plenary power over the judgment. *See* TEX. R. CIV. P. 329b. Consequently, the order is not subject to review on appeal. *See Shrewsbury v. Por*, No. 08-13-00364-CV, 2015 WL 3898801, at *1 (Tex. App.—El Paso June 24, 2015, no pet.) (mem. op.) (order granting new trial on claims dismissed on summary judgment was not reviewable on appeal).

The same is true of the trial court's ultimate decision to deny Nguyen's no-evidence motion for summary judgment. The general rule is that a denial of a summary judgment cannot be reviewed on appeal. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996); *Williams v. Colthurst*, 253 S.W.3d 353, 359–60 (Tex. App.—Eastland 2008, no pet.). More specifically, when, as here, a motion for summary judgment is denied by the trial court and the case is tried on the merits, the order denying the summary judgment cannot be reviewed on appeal. *See Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966); *see also* TEX. R. CIV. P. 166a cmt. ("The denial of a motion under paragraph (i) [no-evidence motion for summary judgment] is no more reviewable by appeal or mandamus than the denial of a motion under paragraph (c) [traditional motion for summary judgment]."). "The party's remedy is to assign error to the trial court's judgment ultimately rendered following trial on the merits." *United Parcel Serv., Inc. v. Tasdemiroglu*, 25 S.W.3d 914, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see also Williams*, 253 S.W.3d at 360 n.3.

Accordingly, we overrule Nguyen's first and second issues.

**Statute of Frauds**

In her remaining issues, Nguyen argues the trial court erred by rendering judgment for Castillo because the oral commission-sharing agreement was unenforceable under two statutes of frauds. *See* TEX. BUS. & COM. CODE § 26.01(a), (b)(6) (statute of frauds for agreements "not to be performed within one year from the date of making the agreement"); TEX. OCC. CODE § 1101.806(c) (RELA statute of frauds for actions "to recover a commission for the sale or purchase of real estate").

**A.     Standard of Review**

The statute of frauds is an affirmative defense and renders a contract that falls within its purview unenforceable. TEX. R. CIV. P. 94; *see also* TEX. BUS. & COM. CODE § 26.1(a); TEX. OCC. CODE § 1101.806(c); *S & I Mgmt., Inc. v. Choi*, 331 S.W.3d 849, 854 (Tex. App.—Dallas 2011, no pet.) ("Under the statute of frauds, certain contracts are not enforceable unless they are in writing and signed by the person against whom enforcement of the contract is sought."). The party pleading the statute of frauds bears the initial burden of establishing its applicability. *See Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 642 (Tex. 2013) (citing TEX. R. CIV. P. 94).

The application of the statute of frauds to a given contract is a question of law. *See id.* An appellate court may review whether a trial court's legal conclusions drawn

from the facts are correct. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Choice! Power, L.P. v. Feeley*, 501 S.W.3d 199, 208 (Tex. App.—Houston [1st Dist.] 2016, no pet.). In an appeal from a bench trial, we review the conclusions of law de novo and will uphold them if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software*, 83 S.W.3d at 794. If we determine a conclusion of law is erroneous, but the trial rendered the proper judgment, the erroneous conclusion of law does not require reversal. *Id.*

**B.      Section 26.01 of the Business and Commerce Code**

In her third issue, Nguyen argues that the oral commission-sharing agreement is unenforceable under Section 26.01 of the Texas Business and Commerce Code because Castillo sought compensation for commissions earned during a two-year period, making the agreement one that could not be performed within one year and therefore subject to the statute of frauds. *See* TEX. BUS. & COM. CODE § 26.01(a), (b)(6). We disagree.

Section 26.01 encompasses agreements that are "not to be performed within one year from the date of making the agreement." *Id.* § 26.01(a), (b)(6). When a promise or agreement, either by its terms or by the nature of the required acts, cannot be performed within one year, it falls within the statute of frauds and is unenforceable unless it is in writing and signed by the person to be charged. *See id.* § 26.01(a), (b)(6); *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex.

10

1991), *overruled on other grounds by In re United Servs. Auto Ass'n*, 307 S.W.3d 299 (Tex. 2010); *Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982) (per curiam); *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 149 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). But if the agreement is capable of being performed within one year, it is not within the statute of frauds. *See Beverick*, 186 S.W.3d at 149.

In deciding whether an agreement is capable of being performed within one year, we compare the date of the agreement to the date when the performance under the agreement is to be completed. *See* TEX. BUS. & COM. CODE § 26.01(b)(6); *Young v. Ward*, 917 S.W.2d 506, 508 (Tex. App.—Waco 1996, no writ). When the date performance will be completed cannot be readily ascertained, the law provides that a writing is not required if performance could conceivably be completed within one year of the agreement's making. *See, e.g.*, *Niday*, 643 S.W.2d at 920 (stating general rule that statute of frauds does not apply when "the parties do not fix the time of performance and the agreement itself does not indicate that it cannot be performed within one year," but does apply if "the agreement, either by its terms *or by the nature of the required acts*, cannot be completed within one year" (emphasis in original)); *Beverick*, 186 S.W.3d at 149. That is, "[a] contract that could *possibly* be performed within a year, however improbable performance within one year may be, does not fall within the statute of frauds." *Beverick*, 186 S.W.3d at 149 (emphasis in original). For example, in *Miller v. Riata Cadillac Company*, 517 S.W.2d 773, 775

11

(Tex. 1974), the Texas Supreme Court concluded that an indefinite term employment contract was performable within one year and, therefore, did not fall within the statute of frauds.

Here, although Castillo sought compensation for commissions earned during a two-year period, the record does not eliminate the possibility that the performance under the oral commission-sharing agreement could have been completed in one year. Stated differently, although it was her burden, Nguyen did not present any evidence that her agreement to share commissions with Castillo could not be performed within a year. *See Dynegy*, 422 S.W.3d at 642. No evidence established that performance under the agreement was for a fixed period only. Rather, the only evidence of the potential duration of the agreement to share commissions was Castillo's testimony, which supported an inference that the agreement was effective for the duration of his hiatus from Terra Nostra. But again, even if Castillo's hiatus lasted two years, no testimony or other evidence established that it was not possible it would last only one year. *See Beverick*, 186 S.W.3d at 149–50 (statute of frauds did not apply even though actual performance of oral agreement took two years to complete because evidence established possibility that appellant could have completed project in one year, even if only under very favorable conditions). Consequently, we cannot say that Nguyen conclusively proved that the oral commission-sharing agreement was unenforceable under Section 26.01. *See id.*; *see*

12

*also Chacko v. Mathew*, No. 14-07-00613-CV, 2008 WL 2390486, at *3 (Tex. App.—Houston [14th Dist.] June 12, 2008, pet. denied) (mem. op.) ("A contract does not fall within the statute of frauds based on the absence of a requirement to complete performance within a year; the lack of any expectation that performance will be completed within a year; or the fact that completion within a year proved to be impossible in light of later circumstances.").

Accordingly, we overrule Nguyen's third issue.

## C.     Section 1101.806 of RELA

In her fourth issue, Nguyen asserts that the oral commission-sharing agreement was unenforceable under Section 1101.806 of RELA. *See* TEX. OCC. CODE § 1101.806(c). Again, we disagree.

Subsection (c) of Section 1101.806 bars judicial recovery of a real estate commission that is not based on a written promise, agreement, or memorandum. *See id.*; *see also Givens v. Dougherty*, 671 S.W.2d 877, 878 (Tex. 1984) (interpreting predecessor statute as statute of frauds); *Prime Income Asset Mgmt., Inc. v. Marcus & Millichap Real Est. Inv. Servs. of Tex., Inc.*, No. 01-13-00020-CV, 2014 WL 7473801, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, no pet.) (mem. op.) (interpreting current statue as statute of frauds); *Lawrence v. Reyna Realty Grp.*, 434 S.W.3d 667, 673 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (same). It provides:

> A person may not maintain an action in this state to recover a
> commission for the sale or purchase of real estate unless the promise or

> agreement on which the action is based, or a memorandum, is in writing and signed by the party against whom the action is brought or by a person authorized by that party to sign the document.

TEX. OCC. CODE § 1101.806(c); *see Tex. Builders v. Keller*, 928 S.W.2d 479, 481 (Tex. 1996) ("A real estate broker may not sue for a commission unless the agreement is evidenced by a writing complying with the Real Estate License Act."). Courts have required strict compliance with this provision, holding that an "agreement to pay a real estate commission must be in writing or it is not enforceable." *Brice v. Eastin*, 691 S.W.2d 54, 47 (Tex. App.—San Antonio 1985, no writ); *see also Trammel Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 637 (Tex. 1997) (Texas courts strictly adhere to RELA's statute of fraud requirements).

However, by its plain language, Section 1101.806 does not "apply to an agreement to share compensation among license holders." TEX. OCC. CODE § 1101.806(a)(1); *see also Ryland Enter., Inc. v. Weatherspoon*, No. 01-10-00715-CV, 2012 WL 6754966, at *9 (Tex. App.—Houston [1st Dist.] Dec. 28, 2012, no pet.) (mem. op.); *Puckett v. Burris*, No. 13-07-00703-CV, 2009 WL 4051975, at *9 n.25 (Tex. App.—Corpus Christi–Edinburg Nov. 24, 2009, pet. denied) (mem. op.). "License holders" include "a broker or sales agent licensed" under RELA. TEX. OCC. CODE § 1101.002(4); *see also id.* § 1101.002(1), (7) (defining "[b]roker" and "[s]ales agent").

14

Here, based on Castillo's testimony that he was a real estate broker who sponsored Nguyen at his brokerage firm when she became a sales agent, the trial court found that at all relevant times Castillo was a licensed broker and Nguyen was a licensed sales agent. Because these findings have evidentiary support and are unchallenged by Nguyen, we are bound by them. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986) (unchallenged findings of fact are binding on the party and the appellate court, unless the contrary is established as a matter of law or there is no evidence to support the finding). And because these findings establish that both Castillo and Nguyen were "license holders," as defined by RELA, Castillo and Nguyen's oral agreement to share commissions fell outside the purview of Section 1101.806. *See* TEX. OCC. CODE § 1101.806(a)(1). We therefore hold that Section 1101.806 did not prohibit Castillo's action to recover commissions under his oral agreement with Nguyen.

Accordingly, we overrule Nguyen's fourth issue.

## Conclusion

We affirm the trial court's judgment.

Amparo Guerra
Justice

Panel consists of Justices Landau, Guerra, and Farris.

15